**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HENNEPIN COUNTY, MINNESOTA**, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**, et al.,<br><br>*Defendants.* | **Case No. 26-cv-2460 (CRC)** |

**PLAINTIFFS' MOTION FOR AN ORDER DIRECTING DEFENDANTS TO HOLD FUNDS PENDING RESOLUTION OF THE MERITS OF THIS CASE**

Plaintiffs respectfully move this Court for an order to preserve funds allocated for the Teen Pregnancy Prevention (TPP) Program that might otherwise expire without being spent. This case was filed in July 2026 to challenge Defendants' implementation of a new policy that effectively destroyed the statutorily created Teen Pregnancy Prevention (TPP) Program, replacing Congress's evidence-based approach to teen pregnancy prevention with an ideological program focused on promoting abstinence and increasing "body literacy." On August 19, 2026, this Court concluded that Plaintiffs are likely to show this 2026 Policy is unlawful and granted Plaintiffs' motion for preliminary relief in large part. As relevant here, the Court's order precludes Defendants from acting on applications submitted in response to the notices of funding opportunity (NOFOs) that Defendants had issued to implement their 2026 Policy in late June. Defendants had planned to use those now-enjoined NOFOs to allocate much of the $101 million in funding for the TPP Program that Congress authorized in the fiscal year 2026 appropriations statute, *see* Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, 140 Stat. 173, 281 (Feb. 3, 2026).

The injunction of Defendants' 2026 Policy, and in particular the enjoining of its implementation through their new NOFOs, coupled with Defendants' inaction since the injunction issued, raise a real risk that a substantial portion of the $101 million that Congress appropriated will expire at the end of this fiscal year on September 30, 2026, without being spent as Congress directed. Since this Court's issuance of the injunction, Defendants have failed to offer any alternative plan for implementing the TPP Program and spending the money that Congress appropriated for it—only heightening the risk that the funds will expire without being used. Accordingly, pursuant to 31 U.S.C. § 1502(b) and this Court's inherent equitable power, Plaintiffs respectfully move for an order (1) directing Defendants to hold the TPP Program funds made available in the Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, 140 Stat. 173, 281, and (2) suspending the September 30 obligation deadline during the pendency of this case. As required by Local Rule 7(m), Plaintiffs have conferred with Defendants regarding the relief requested in this motion; Defendants have not provided their position.

## BACKGROUND

In the Consolidated Appropriations Act, 2026, Congress appropriated $101 million to the Department of Health and Human Services (HHS) "for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy." Pub. L. No. 119-75, 140 Stat. at 281. Apart from a small amount that could be spent on program support, the statute directed that 75 percent of this TPP Program appropriation be spent on Tier 1 grants—which "replicat[e] programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other associated risk factors"—and 25 percent be spent on Tier 2 grants—which support research "to develop, replicate, refine, and test additional models and innovative strategies

for preventing teenage pregnancy." *Id.* Those funds are available for obligation through September 30, 2026. *See id.* at 174.

HHS has typically operated the TPP Program through cohorts of multi-year cooperative agreements. Under that approach, although funding is ultimately allocated on an annual basis out of each year's TPP Program appropriation, awardees are eligible to receive non-competitive continuation funding throughout a five-year project period. At the time of the most recent appropriation in February 2026, TPP Program awardees were midway through the third year of their five-year project periods, and they expected to soon apply for and receive continuation awards to support the fourth year of their ongoing projects.

In late June 2026, rather than continue funding those preexisting projects consistent with HHS's past practice, Defendants adopted a new policy (the 2026 Policy) to redirect the program away from the evidence-based approach that Congress instructed the agency to use. As Plaintiffs laid out more fully in their motion seeking preliminary relief, *see* Dkt. No. 14, Defendants implemented the 2026 Policy through two related actions: First, they issued new NOFOs seeking to award the funds made available in the 2026 Consolidated Appropriations Act to projects that satisfied a new set of agency priorities, which were disconnected from or in direct conflict with statutory directives. *See* Compl., Ex. D, Dkt. No. 1-4 (Tier 1 2026 NOFO); Compl., Ex. E, Dkt. No. 1-5 (Tier 2 2026 NOFO). Second, they terminated the overwhelming majority of existing TPP Program cooperative agreements, on the ground that awardees' projects failed to conform to the same agency priorities introduced in the new NOFOs.

Defendants' interrelated actions have substantial implications for their ability and plans to allocate the funds that Congress appropriated for teen pregnancy prevention in the 2026 Consolidated Appropriations Act. With the mass termination of cooperative agreements,

Defendants chose not to spend the $101 million appropriation on preexisting awards, even though the agency had previously determined that those projects would support "medically accurate and age appropriate programs that reduce teen pregnancy." And with the new NOFOs, Defendants announced their intention to instead use the vast majority of funds that Congress appropriated for this fiscal year on projects that aligned with their 2026 Policy. *See* Tier 1 2026 NOFO at 5 (estimating that $63,400,000 in total funding would be made available for the new Tier 1 NOFO); Tier 2 2026 NOFO at 5 (estimating that $8,300,000 in total funding would be made available for the new Tier 2 NOFO).

In July, Plaintiffs filed this case to challenge the legality of the 2026 Policy. *See* Compl., Dkt. No. 1. They promptly moved for a stay of the 2026 Policy under 5 U.S.C. § 705 and a preliminary injunction. *See* Mot., Dkt. No. 14. On August 19, 2026, this Court granted that motion in large part, after finding that Plaintiffs were "likely to succeed on their arbitrary-and-capricious challenge to the lawfulness of the 2026 Policy and the NOFOs and grant terminations that have implemented it." Mem. Op. at 53, Dkt. No. 34. The Court therefore enjoined Defendants "from implementing the 2026 Policy by way of the FY 2026 NOFOs." *Id.* at 56 (describing scope of relief); *see* Order on Pls.' Mot. for Preliminary Inj., Dkt. No. 33 (preliminarily enjoining Defendants and their agents "from implementing the U.S. Department of Health and Human Services's 2026 Policy regarding the Teen Pregnancy Prevention Program, to the extent consistent with the Court's Memorandum Opinion"). The Court declined, however, to separately "enjoin[] the June 26, 2026 termination of TPP awards," given its questions about the Court's jurisdiction to do so and in light of the Court's evaluation of the preliminary injunction factors. *See* Mem. Op. at 58, Dkt. No. 34.

Following the Court's opinion and order, the undersigned counsel twice reached out to counsel for the government to inquire about Defendants' plans to spend the substantial funds that remain out of the fiscal year 2026 TPP Program appropriation before they expire on September 30. Government counsel responded that, as of September 1, 2026, the agency did not have any "program updates." Time is thus running out for Defendants to obligate the TPP fiscal year 2026 appropriation—whether by taking the most expeditious step of reinstating preexisting awards or instead by issuing new NOFOs that would allow them to implement the program consistent with this Court's opinion. And as the government recognized at the preliminary injunction hearing, "drafting a NOFO takes time," and the application window should "be open for a reasonable period." Hr'g Tr. 61:17–19, Dkt. No. 35. Accordingly, Plaintiffs bring this motion to ensure that funds from HHS's fiscal year 2026 TPP appropriation remain available to provide meaningful relief at the end of this case, and that the funds do not expire on September 30 without obligation solely due to Defendants' unlawful effort to transform the program in violation of Congress's directives.

## ARGUMENT

To preserve the Court's ability to offer meaningful relief at the end of this case, Plaintiffs respectfully request that this Court order Defendants to hold any unspent funds from the TPP Program's fiscal year 2026 appropriation beyond the upcoming September 30, 2026, statutory lapse date, and suspend the operation of that lapse date throughout the pendency of this litigation to ensure that the contested funds remain available. The Court has both statutory and equitable authority to enter this interim relief and exercising that power is necessary and appropriate here.

This Court has statutory authority to order Defendants to hold disputed funds and to suspend the operation of the September 30 obligation deadline under 31 U.S.C. § 1502(b), which

provides that any "provision of law requiring that the balance of an appropriation or fund be returned to the general fund of the Treasury at the end of a definite period does not affect the status of lawsuits or rights of action involving the right to an amount payable from the balance." 31 U.S.C. § 1502(b). This provision, as the D.C. Circuit recently recognized, "expressly authorize[s] courts to suspend the lapse of budget authority while lawsuits play out." *Goodluck v. Biden*, 104 F.4th 920, 928 (D.C. Cir. 2024).

The Court likewise possesses inherent equitable power "to order that funds be held available beyond their statutory lapse date if equity so requires." *State of Conn. v. Schweiker*, 684 F.2d 979, 997 (D.C. Cir. 1982); *see also Washington v. U.S. Dep't of Educ.*, 161 F.4th 1136, 1141 (9th Cir. 2025) (recognizing same); Order Directing Defendants to Hold Funds Pending Resolution of the Merits of the Case, *Nat'l Family Planning & Reproductive Health Ass'n v. Kennedy*, No. 25-cv-1265-ACR (Sept. 12, 2025), Dkt. No. 38 (holding same and ordering relief in advance of September 30, 2025, obligation deadline). This authority "does not conflict with Congress' exclusive power to appropriate funds," *Schweiker*, 684 F.2d at 997, but instead "give[s] effect to congressional intent by" preserving a court's ability to provide meaningful relief with respect to disputed funds, *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 184 (D.C. Cir. 1992); *see also Nat'l Ass'n of Neighborhood Health Ctrs. v. Mathews*, 551 F.2d 321, 339 (D.C. Cir. 1976) (recognizing that extension of obligation date may be needed to ensure that relief can be afforded and remanding to district court to determine appropriate length of extension).

Thus, "whether through 31 U.S.C. § 1502(b), the Court's own equitable authority, or the underlying mechanics of federal appropriations," the Court "possess[es] the authority to suspend the expiration of the funds at issue here." *Nat'l All. to End Homelessness v. Turner*, 827 F. Supp.

3d 281, 287 n.2 (D.R.I. 2026) (citing U.S. Gen. Accounting Office, *Principles of Federal Appropriations Law*, 5-82 (3d ed. 2004)).

The Court should exercise its power to order Defendants to hold the disputed funds and to extend the availability of the appropriation. As courts have recognized, preserving funds after an obligation deadline may be necessary to afford meaningful relief and to prevent disputes (or some portion of a dispute) from becoming moot. *See City of Houston, Tex. v. HUD*, 24 F.3d 1421, 1426 (D.C. Cir. 1994) (recognizing that power allows courts "to take action to preserve the status quo of a dispute and protect their ability to decide a case properly before them" (quoting *Nat'l Ass'n of Regional Councils v. Costle*, 564 F.2d 583, 588 (D.C. Cir. 1977))). Without the Court's intervention here, up to $101 million in funding that Congress directed Defendants to spend on evidence-based, effective teen pregnancy prevention programming will expire without obligation—that is, unless Defendants find some lawful way of using those funds before September 30. That date is rapidly approaching, and Defendants have no plan for how to spend the funds now that this Court has enjoined their efforts to *mis*allocate the funds under the 2026 NOFOs. Accordingly, it is appropriate for this Court to extend the obligation deadline and preserve these funds for future use as Congress directed.

The timing of Defendants' unlawful efforts to remake the TPP Program through the 2026 Policy further counsels in favor of entering the requested order. In late June 2026, with just three months left to obligate funds from the fiscal year 2026 appropriation, Defendants terminated nearly all existing TPP awards and issued new NOFOs requiring applicants to put together proposals for radically different programs in just a few short weeks. *See* 2026 Tier 1 NOFO at 5 (setting application deadline of July 23); 2026 Tier 2 NOFO at 5 (same). Defendants originally left themselves only ten weeks to review and award applications. Now that the Court has properly

enjoined the 2026 NOFOs, Defendants have even less time to find a way of allocating the funds legally. They could reinstate the program and awards that HHS previously supported—an obvious and efficient solution that Defendants have thus far refused to take. Otherwise, Defendants would need to "reissue the NOFOs under the previously-applied TPP guidelines," which would likewise allow HHS to "achieve its statutory mandate." Mem. Op. at 58, Dkt. No. 34. That process takes time, however, and Defendants cannot feasibly issue new NOFOs, collect and review applications, and select awardees between now and September 30. In other words, the "Court is faced with a case in which an executive agency has made a last-minute decision to make major, disruptive changes to grants within its purview, all for the express purpose of accomplishing the current administration's policy objectives." *Nat'l All. to End Homelessness*, 827 F. Supp. 3d at 293. Where the chaos of an agency's last-minute decision risks the expiration of relevant funds without being put to any lawful use, it is appropriate to order those funds to "continue[] to be … preserved." *Id.* at 294. An order preserving funds will ensure that this Court can craft meaningful relief at final judgment, which Plaintiffs plan to seek expeditiously given the ongoing harm they are suffering as a result of Defendants' failure to spend TPP funds on their congressionally mandated purpose.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion, order Defendants to hold the TPP Program funds made available in the Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, 140 Stat. 173, 281, during the pendency of this litigation, and suspend the operation of the September 30, 2026, obligation deadline that would otherwise apply to the relevant funds.

Date: September 2, 2026

Respectfully submitted,

*/s/ Michael J. Torcello*

Cormac Early (DC Bar No. 1033835)
Allison M. Zieve (DC Bar No. 424786)
Stephanie Garlock (DC Bar No. 1779629)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
Phone: (202) 588-1000
cearly@citizen.org

*Counsel for Plaintiffs Hennepin County, King County, and SIECUS*

Emily Nestler (DC Bar No. 973886)
Planned Parenthood Federation of America
1100 Vermont Avenue NW
Washington, DC 20005
Phone: (202) 973-4800
emily.nestler@ppfa.org

*Counsel for Plaintiff Planned Parenthood of the Heartland, Inc.*

Dylan Cowit*
Valentina De Fex*
Planned Parenthood Federation of America
123 William Street, 9th Floor
New York, NY 10038
Phone: (212) 261-4696
dylan.cowit@ppfa.org
valentina.defex@ppfa.org

*Counsel for Plaintiff Planned Parenthood of the Heartland, Inc.*

Michael J. Torcello (DC Bar No. 90014480)
Kate Talmor (DC Bar No. 90036191)
Carrie Y. Flaxman (DC Bar No. 458681)
Robin F. Thurston (DC Bar No. 1531399)
Skye L. Perryman (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
mtorcello@democracyforward.org
ktalmor@democracyforward.org
cflaxman@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs Hennepin County, King County, and SIECUS*

Hannah Klain*
Karen Dunn (DC Bar No. 1002520)
Jeannie Rhee (DC Bar No. 464127)
Dunn Isaacson Rhee LLP
401 9th Street NW
Washington, DC 20004
Phone: (202) 240-2900
hklain@dirllp.com
kdunn@dirllp.com
jrhee@dirllp.com

*Counsel for Plaintiffs*

* Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2026, I filed the foregoing document with the Clerk of Court for the U.S. District Court for the District of Columbia using the court's CM/ECF system.

*/s/ Michael J. Torcello*
Michael J. Torcello