UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HENNEPIN COUNTY, MINNESOTA, et al.<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>Defendants. | Civil Action No. 26-2460 (CRC) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION**
**FOR AN ORDER DIRECTING PLAINTIFFS TO HOLD FUNDS**

Defendants the U.S. Department of Health and Human Services (the "Department" or "HHS") and Robert F. Kennedy, Jr., in his capacity as Secretary of the Department, respectfully submit this opposition to Plaintiffs' Motion for an Order Directing Defendants to Hold Funds (ECF No. 37, "Mot.").

## INTRODUCTION

Having sought and obtained a preliminary injunction, Plaintiffs now seek a further order from this Court "directing Defendants to hold the TPP Program funds" at issue and "suspending the September 30 obligation deadline" for those funds "during the pendency of this case." Mot. 2. The Court, however, lacks authority to enter the relief requested for a number of reasons.

First, Plaintiffs argue that this Court may suspend the obligation deadline under 31 U.S.C. § 1502(b), but that provision by its own terms applies only when plaintiffs have a pending suit "involving the right to an amount payable from the balance." That provision has no application where, as here, Plaintiffs seek a future opportunity to compete for funds but can advance no "right to an amount payable" of the expiring funds in question. If Plaintiffs intend for their cooperative

agreement termination claims to supply the missing "right" to payment, that route is blocked because this Court lacks jurisdiction over those claims.

Second, the Court's inherent equitable powers are also insufficient to justify Plaintiffs' requested relief. Plaintiffs rely on cases that have been superseded by more recent authorities holding that "equitable relief cannot violate statutes." *Goodluck v. Biden*, 104 F.4th 920, 927 (D.C. Cir. 2024). That principle dooms Plaintiffs' requested order, which would override Congress's decision to establish a particular obligations deadline, thereby intruding on Congress's constitutional authority over appropriations. Making matters worse, the proposed order seems to be the first step in an end run around the requirements of the Impoundment Control Act of 1974, which sets out specific and exclusive procedures for disputes over the President's failure to obligate or spend funds authorized by Congress for appropriation. 2 U.S.C. § 687.

Finally, even if the Court had statutory or inherent equitable authority to suspend the lapse of TPP Program funds at issue, the relief Plaintiffs seek is unwarranted. By inviting the Court to "hold" the funds subject to conditions not present in the Court's August 19, 2026 Order, Plaintiffs are requesting relief that is injunctive in character without even attempting to make the required showings. And by conditioning Defendants' ability to obligate funds on their compliance with "the principles laid out" in this Court's sixty-one page opinion, Proposed Order (ECF No. 37-1), Plaintiffs would needlessly inject confusion and uncertainty into the final days of the 2026 fiscal year. For these reasons, and others identified below, Plaintiffs' motion should be denied.

## BACKGROUND

The Teen Pregnancy Prevention ("TPP") Program, administered by the Department's Office of Population Affairs, is a national grant program that funds various organizations working to prevent teen pregnancy and prevent sexually transmitted infections among adolescents. The program is funded by an annual appropriation "for making competitive contracts and grants to

public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy." Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, 140 Stat. 173, 281.

Plaintiffs in this suit—three award recipients (the "Awardee Plaintiffs") and a non-profit organization—challenge two sets of agency actions in relation to the TPP Program. First, Plaintiffs challenge the Department's termination of the Awardee Plaintiffs' cooperative agreements on the grounds that the curricula employed by the Awardee Plaintiffs "are not age appropriate, as they contain overly sexually explicit or pornographic content that is not necessary to achieve the TPP program's statutory mission." *E.g.*, ECF No. 14-2 at ECF p. 33. Second, Plaintiffs challenge the issuance of 2026 Notices of Funding Opportunity ("NOFOs"). Plaintiffs characterize the cooperative agreement terminations and issuance of the NOFOs together as the "2026 Policy," Compl. (ECF No. 1) ¶ 5, and contend the "2026 Policy" is contrary to law and arbitrary and capricious.

Plaintiffs sought a preliminary injunction and section 705 stay "preliminarily enjoin[ing] the 2026 Policy and the actions flowing from it." Pls.' Mem. (ECF No. 14-1) at 45. This Court "enjoin[ed] implementation of the [2026 Policy], including the implementation of the FY 2026 NOFOs, for the pendency of this action," but did not "order interim reinstatement of the terminated grants at this time because of lingering uncertainty over the Court's power to order such relief." Mem. Op. (ECF No. 34) at 61; *accord* Order (ECF No. 33) (enjoining Defendants "from implementing the . . . 2026 Policy regarding the Teen Pregnancy Prevention Program, to the extent consistent with the Court's Memorandum Opinion").

Plaintiffs have now filed a Motion for an Order Directing Defendants To Hold Funds Pending Resolution of the Merits of this Case (ECF No. 37). Plaintiffs observe that this Court's injunction "precludes Defendants from acting on applications submitted in response" to the 2026

NOFOs, and note that some portion of the $101 million appropriated by Congress in the 2026 Consolidated Appropriations Act for the TPP Program is set to "expire at the end of this fiscal year on September 30, 2026" if not spent. Mot. 1–2. Plaintiffs seek an order requiring Defendants to "hold the TPP Program funds made available in the Consolidated Appropriations Act, 2026, that are at issue in this case during the pendency of this litigation" and "suspend[ing]" "the statutory lapse of the TPP Program funds at issue in this case . . . during the pendency of this litigation." Proposed Order (ECF No. 37-1) (citations omitted). Plaintiffs' proposed order provides, however, that "while this litigation is pending, Defendants may award funds or issue Notices of Funding Opportunity that would allow them to award funds in a manner consistent with the principles laid out" in this Court's Memorandum Opinion on the preliminary injunction. *Id*.

## ARGUMENT

### I. Neither Section 1502(b) Nor the Court's Equitable Powers Authorize this Court to Hold the Relevant Funds Available or Suspend the Obligation Deadline.

Plaintiffs propose that this Court "hold the funds made available in the Consolidated Appropriations Act, 2026," and "suspend[] the September 30 obligation deadline" for those funds "during the pendency of this case." Mot. 2. But contrary to Plaintiffs' suggestion, neither 31 U.S.C. § 1502(b) nor the Court's equitable powers permit such relief.

*First*, section 1502(b) does not authorize the relief that Plaintiffs request. That provision addresses situations in which an "appropriation or fund" such as the TPP Program funds must be "returned to the general fund of the Treasury at the end of a definite period." 31 U.S.C. § 1502(b). In such cases, section 1502(b) provides that the requirement to return the funds to the Treasury "does not affect the status of lawsuits or rights of action involving the right to an amount payable from the balance." *Id*.

As an initial matter, Plaintiff's interpretation of Section 1502(b) is untenably broad. In an exercise of its Appropriations Clause power, Congress can extend the period of availability for appropriations via statute and has done so in narrow circumstances. For instance, Section 1558 expressly extends the period of availability in the narrow context of bid protests.[1] By contrast, Section 1502(b) provides that lawsuits or rights of action are not affected by "[a] provision of law requiring that the balance of an appropriation or fund *be returned to the general fund of the Treasury* at the end of a definite period." When an appropriation *expires* (or lapses) at the end of the period of availability—such as the end of Fiscal Year 2026 here—the balance is *not* returned to the general fund of the Treasury. *See* P.L. 97-258 § 1552(a), 96 Stat. 928 (1982) (as amended) (codified at 31 U.S.C. § 1552(a)). Rather, the balance within an appropriation account is no longer available to incur new obligations, but remains available for five additional fiscal years to process transactions related to obligations properly incurred during the period of availability. 31 U.S.C. § 1553(a). Section 1502(b) thus deals with the procedure for *closing* appropriation accounts—distinct from *expiration* of an appropriation. Section 1502(b) refers to and interacts with technical account closure provisions in Sections 1552(a) and 1553(a) to ensure that the procedure of *closing* an appropriation account—distinct from an appropriation *expiring*—does not affect claims based on obligations that were properly incurred while the appropriation was available for new obligations. All this means that Section 1502(b) provides no authority to suspend the lapse of funds here.

---

[1] *See* 31 U.S.C. § 1558 ("Notwithstanding [§ 1552] or any other provision of law, funds available to an agency for obligation for a contract at the time a protest or other action [involving a challenge to a contracting process] is filed in connection with a solicitation for, proposed award of, or award of such contract shall remain available for obligation for 100 days after the date on which the final ruling is made on the protest or other action.").

Moreover, even if Section 1502(b) applied to the expiration of appropriations, it would not apply here for another reason. Section 1502 is concerned with "expenses" incurred and "contracts" made during the period of availability. 31 U.S.C. § 1502(a). Accordingly, Section 1502(b) applies only when a plaintiff files a suit "involving the right to an amount payable from the balance" of an appropriation. *Id*. In seeking to "ensure that the contested funds remain available" for future awardees (Mot. 4), however, Plaintiffs do not assert a "right to an amount payable" from the 2026 FY TPP Program funds at issue. 31 U.S.C. § 1502(b). Though Plaintiffs presumably hope to compete for the funds and perhaps even be awarded some portion of them, Plaintiffs have no "right" to the funds in question. Indeed, it is not clear how Plaintiffs here—a small fraction of the awardees from the previous NOFO and a smaller fraction still of prospective applicants for future funding—could claim a right to the entire balance of appropriated funds.

Plaintiffs (at Mot. 6) quote *Goodluck v. Biden* 104 F.4th 920, 928 (D.C. Cir. 2024), for the proposition that Section 1502(b) "expressly authorize[s] courts to suspend the lapse of budget authority while lawsuits play out." *Goodluck* was describing Section 1502(b) in general terms in order to contrast it with the statute at issue in that case, which concerned diversity visas, not appropriations. The court did not purport to interpret the requirements of Section 1502(b), nor did it suggest (let alone hold) that the statute applies even where a plaintiff is not seeking to recover a specific "amount payable" to which it has a "right."

If Plaintiffs mean to suggest that they hold a "right to an amount payable" arising from the earlier termination of their cooperative agreements, that theory too is defective. In light of the Supreme Court's holdings in *Department of Education v. California*, 604 U.S. 650 (2025), and *NIH v. American Public Health Association*, 145 S. Ct. 2658 (2025), this Court lacks jurisdiction to hear Plaintiffs' cooperative agreement termination claims. *See California*, 604 U.S. at 651

("[T]he APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money.'"); Defs.' Memo. (ECF No. 28) at 9–15. This Court recognized that Plaintiffs did not establish a "likelihood of success" on this jurisdictional issue and thus declined to order provisional relief as to the cooperative agreement terminations. Mem. Op. (ECF No. 34) at 26–35. In short, then, Plaintiffs do not assert a valid "right to an amount payable from the balance" of FY 2026 TPP Program funds and therefore cannot invoke Section 1502(b) to authorize the relief they seek.

*Second*, Plaintiffs' recourse to the Court's inherent equitable powers to support the relief they seek is also unavailing. Mot. 6. Citing older D.C. Circuit cases like *State of Connecticut v. Schweiker*, 684 F.2d 979 (D.C. Cir. 1982), Plaintiffs assert that even if Section 1502(b) does not authorize their requested relief, the Court "possesses inherent equitable power 'to order that funds be held available beyond their statutory lapse date if equity so requires.'" Mot. 6. The D.C. Circuit has subsequently explained, however, that those cases "were decided during the '*ancien regime*' when courts took a much more freewheeling approach to the law of remedies" than that which is allowed under current Supreme Court precedents. *Goodluck*, 104 F.4th at 929. Today, it is clear that courts in equity may not "override clear statutory limits"—such as an appropriations deadline—"without some other statutory authority." *Id.*; *see United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483 (2001) ("[A] court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation."); *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 332 (1999). Indeed, the Supreme Court has already held in the context of appropriations disputes that courts in equity "cannot grant . . . a money remedy that Congress has not authorized." *OPM v. Richmond*, 496 U.S. 414, 426 (1990) (citing *INS v. Pangilinan*, 486

U.S. 875, 883 (1988)). The period of availability is expressly written into the statute and is as legally binding as the amount appropriated and the purpose of the appropriation.

Here, Congress has determined that the appropriations at issue should expire at the end of the fiscal year—a legitimate exercise of its constitutional authority over appropriations. Overriding that decision would not only exceed the Court's equitable authority, it would also conflict with the Appropriations Clause, which prohibits drawing money out of the Treasury that has not been appropriated by an Act of Congress. *Id.* at 428 (discussing how equitable remedies could effectively "render the Appropriations Clause a nullity"). That concern is especially heightened in a case like this one, which involves an annual appropriation and where a suspended obligations deadline could have spillover effects for future appropriated funds. FY 2026 funds with an artificially extended period of availability would directly overlap with the recently enacted Continuing Appropriations and Extensions Act, 2027 (Pub L. No. 119-103) that provides FY 2027 appropriations for TPP at a certain level. An extended period for FY 2026 funds would create additional funding for TPP during FY 2027, exceeding what Congress intended.

Moreover, Plaintiffs' suggestion that "holding" the funds is necessary to preserve this Court's ability to "afford meaningful relief" (Mot. 7) is unfounded. The appropriated funds can be awarded without contravening what Plaintiffs call the "2026 Policy," as Defendants explain in Section II, *infra*. Indeed, Plaintiffs' own proposed order (ECF No. 37-1) contemplates that "Defendants may *award funds* or issue Notices of Funding Opportunity" consistent with this Court's August 19, 2026 Memorandum Opinion, contradicting any assertion that the continued availability of those funds is required for this Court to "craft meaningful relief at final judgment." Mot. 8.

Finally, Plaintiffs' proposed relief further conflicts with Congress's judgment because it appears to be the first step in an end-run around the exclusive procedures of the Impoundment Control Act of 1974 ("ICA"). The ICA specifies various procedures for the President to rescind funds, and it provides a specific enforcement mechanism at the end of that process in the form of a suit by a Comptroller General. 2 U.S.C. § 687; *cf. Dep't of State v. AIDS Vaccine Advocacy Coal.*, 146 S. Ct. 19 (2025). These procedures ensure that the political branches—not courts or private parties—remain in control of disputes over the President's failure to obligate or spend funds authorized by Congress for appropriation. Plaintiffs, however, assert that the obligated funds must be "preserved" after the deadline set by Congress in order to "ensure that this Court can craft meaningful relief at final judgment"—presumably in the form of an order to obligate or spend the funds. Mot. 8. If a dispute arises over the alleged withholding of funds, such dispute must be channeled through the procedures of the ICA. This Court should not "preserve" the funds in order to facilitate relief that Congress has not authorized plaintiffs to seek.

## II. If this Court Suspends the Lapse of TPP Program Funds, It Should Permit Any Obligation of Funds Not Inconsistent with this Court's Preliminary Injunction.

Even if the Court were to conclude that a suspension of the lapse of funds is warranted, it should decline Plaintiffs' unsupported invitation to impose further restrictions on the Defendants' lawful uses of the appropriated funds.

This Court's August 19, 2026 Order already prohibits the expenditure of funds in furtherance of the "2026 Policy," including via the issuance of awards through the 2026 Notices of Funding Opportunity. Defendants understand this prohibition to encompass the awarding of funding based on the challenged parameters in the 2026 NOFOs, including, for example, what the Court characterized as a "mandate" for "an abstinence-only approach to pregnancy prevention," promotion of the concept of "body literacy," and a prohibition on "the 'normalization' of sexual

activity among minors." Mem. Op. (ECF No. 34) at 60–61. However, Plaintiffs' present motion would apparently go beyond the August 19, 2026 Order and "hold" the relevant funds "during the pendency of this litigation." Proposed Order (ECF No. 37-1). Plaintiffs proposed order would "allow [Defendants] to award FY 2026 funds" only in a "manner consistent with the principles laid out" in the Court's August 19, 2026 opinion. *Id.*

Having obtained an injunction barring the expenditure of funds in furtherance of the "2026 Policy," Plaintiffs cannot now obtain further restrictions on the lawful expenditure of FY2026 TPP Program funds for at least two reasons. *First*, whatever the merits of Plaintiffs' request to suspend the lapse, Plaintiffs have not demonstrated their entitlement to further injunctive relief that would extend beyond the currently applicable injunction. "Though not formally styled as a preliminary injunction motion," the substance and effect of Plaintiffs' requested relief here would be a bar on expenditures that would further restrain Defendants' conduct. *Bennett v. Donovan*, 4 F. Supp. 3d 5, 17 (D.D.C. 2013). In that regard, Plaintiffs' proposed relief reaches beyond the suspension of the lapse arguably authorized by 31 U.S.C. § 1502(b) and beyond the Court's August 19, 2026 Order. Yet Plaintiffs make no effort to demonstrate they are entitled to such relief. *See Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008).

*Second*, Plaintiffs' proposed relief would create ambiguity where clarity is essential. To prevent uncertainty and confusion on the part of the enjoined party, "basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1137 (D.C. Cir. 2009). An order requiring that agency spending conform with "the principles laid out" in a sixty-one page opinion is an invitation to further disputes. Proposed Order (ECF No. 37-1). Relatedly, Plaintiffs' proposed relief places undue emphasis on the opinion, even though it is the order and not the opinion that should be given

binding effect. *Cf. Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) ("It is a federal court's judgment, not its opinion, that remedies an injury."); *United States v. Google LLC*, Civ. A. No. 20-3010 (APM), 2025 WL 3496448, at *15 (D.D.C. Dec. 5, 2025) ("[T]he Final Judgment is what restrains Google, not an opinion.").

Indeed, Plaintiffs' motion inadvertently illustrates the ambiguities that would attend imposing further, ill-defined limitations on the lawful obligation of funds: it implies that the only lawful ways to obligate TPP Program funds would be to either "reinstat[e] preexisting awards" or "issu[e] new NOFOs." Mot. 5; *see also* Mot. 8 (similar). But because the relevant statute broadly authorizes the Department to "ma[k]e available" funds through "competitive contracts and grants to public and private entities," 140 Stat. at 281, appropriated funds can be obligated through numerous mechanisms. For example, the authorizing statute allows the Department to enter into competitive contracts awarding funds to an organization (or organizations) to replicate proven effective teen pregnancy prevention programs. At the time of the issuance of the 2023 NOFOs, there were dozens of such programs that had been proven effective through rigorous evaluation to reduce teenage pregnancy. 2023 Tier 1 NOFO (ECF No. 1-1) at 10–11. A competitive contract awarded to replicate such programs would fulfill the requirements of both the appropriations statute and this Court's August 19, 2026 Order for "Tier 1" TPP Program Funds. Moreover, the Department might also supplement existing, non-cancelled awards for "Tier 2" TPP Program Funds with non-competitive continuation awards.

By seeking to "hold" appropriated funds and impose additional restrictions on the lawful obligation of such funds, Plaintiffs are demanding unwarranted restrictions that are not sufficiently clear to guide the parties' conduct. This Court instead should confirm that Defendants may lawfully expend the TPP Program funds in any manner consistent with the August 19, 2026 Order.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion.

Dated: September 11, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

PETER C. PFAFFENROTH, D.C. Bar #496637
Chief, Civil Division

By: *    /s/ Andrew J. Vaden*
ANDREW J. VADEN, D.C. Bar # 1044860
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2500
andrew.vaden@usdoj.gov

*Attorneys for the United States of America*