**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HENNEPIN COUNTY, MINNESOTA**, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**, et al.,<br><br>*Defendants*. | **Case No. 26-cv-2460 (CRC)** |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR AN ORDER DIRECTING DEFENDANTS TO HOLD FUNDS PENDING RESOLUTION OF THE MERITS OF THIS CASE**

Defendants do not contest that tens of millions of appropriated dollars for the Teen Pregnancy Prevention (TPP) Program will likely expire in just two weeks' time, without being obligated as Congress instructed. Yet they oppose Plaintiffs' motion for an order suspending the funds' obligation deadline, which would prevent that outcome and ensure that those funds are spent in the way Congress intended. Defendants' opposition is rooted in the contention that courts have neither the statutory nor equitable power to take the requested action, but that contention is wrong. For more than half a century, the D.C. Circuit has recognized that district courts have the power to suspend deadlines for obligating funds to prevent agencies from thwarting Congress's will. This Court should exercise that power here. Defendants' arguments against the requested relief ignore both binding case law and well-established legal principles governing federal appropriations. The Court should grant the requested relief.

**I. The Court has both statutory and equitable authority to issue the requested relief.**

**A.** Defendants misread 31 U.S.C. § 1502(b), which they claim does not allow courts to extend an obligation deadline when an agency's unlawful activity has made it impossible for the agency to obligate grant funds before the deadline Congress set. *See* Opp. 5. The D.C. Circuit, and numerous other courts, have said otherwise, however. The D.C. Circuit has explained that § 1502(b) operates as an "express[] authoriz[ation]" for "courts to suspend the lapse of budget authority" and to "make government funds available beyond the end of the relevant appropriation"—in other words, beyond the deadline for obligating funds contained in each appropriation act. *Goodluck v. Biden*, 104 F.4th 920, 928 (D.C. Cir. 2024). The Ninth Circuit has similarly recognized that a court, under § 1502(b), could "suspend the lapse of budget authority" and allow the government to obligate contested funds to grantees, even after the statutory deadline for obligation had passed. *Washington v. U.S. Dep't of Educ.*, 161 F.4th 1136, 1141 (9th Cir. 2025). Other courts have reached the same conclusion. *See, e.g.*, *Illinois v. Noem*, 813 F. Supp. 3d 282, 300 & n.7 (D.R.I. 2025) (holding that a challenge to reallocation of grant funds was not mooted by the lapse in the relevant appropriation and citing "the Court's statutory authority under 31 U.S.C. § 1502(b)"); *Nat'l All. to End Homelessness v. Turner*, 827 F. Supp. 3d 281, 287 n.2 (D.R.I. 2026) (recognizing that § 1502(b) supported the court's "authority to suspend the expiration of the funds at issue").

Defendants' efforts to distinguish this line of cases, and its clear endorsement of courts' power under § 1502(b) to suspend obligation deadlines, are unavailing. First, Defendants contend that § 1502(b) is inapplicable to the deadline that Congress sets for the agency to obligate funds because that section references when funds *revert to the Treasury*, rather than the lapse in the executive's authority to *incur new obligations*. But when Congress enacted § 1502(b) in 1973, Pub. L. No. 93-52, § 111, 87 Stat. 130, 134 (July 1, 1973), in the midst of a Nixon-era

impoundment crisis, those events occurred at the same time: Unobligated balances were "withdrawn" and "revert[ed]" to the general fund of the Treasury "[u]pon the expiration of the period of availability for obligation." 31 U.S.C. § 701(a)(2) (1970); *see Pennsylvania v. Weinberger*, 367 F. Supp. 1378, 1385 & n.37 (D.D.C. 1973) (explaining that "[a]ppropriated funds which are unobligated during the designated fiscal year revert to the general fund of the United States Treasury" and citing then-current version of 31 U.S.C. § 701). To be sure, Congress later altered that portion of the statutory scheme—separating the two events in time while still maintaining the link between them. Now, an account is "closed" and "the remaining balance," including funds that were never obligated, returns to the Treasury at the end of the "5th fiscal year after the period of availability for obligation … ends." 31 U.S.C. § 1552; Pub. L. No. 101-510, § 1405, 104 Stat. 1485, 1676 (Nov. 5, 1990). But that amendment does not change the operation of § 1502(b) because § 1502(b) continues to link the two dates. The Government Accountability Office (GAO)—an arm of the legislature that serves as an expert and Congress's watchdog on issues of appropriations, *see U.S. Dep't of Navy v. FLRA*, 665 F.3d 1339, 1349 (D.C. Cir. 2012)—concurs. In *Principles of Federal Appropriations Law* (GAO Redbook), GAO's major reference work on issues that arise about the use and obligation of appropriated funds, GAO states that "section 1502(b) continues to apply to [the] expiration" of funds, "in addition to [the] closing" of accounts. GAO, Principles of Federal Appropriations Law 5-88 (3d ed. 2004). As GAO explains, allowing expired accounts "to be available to liquidate obligations that arise from injunctive relief ordered by a court" is consistent with the overall statutory scheme as well as the statute's purpose. *Id.*

Second, Defendants contend that § 1502(b) does not apply here because, in their view, "Section 1502 is concerned with 'expenses' incurred and 'contracts' made during the period of

availability," such that "Section 1502(b) applies only" when a plaintiff is seeking payment of expenses under such a contract. *See* Opp. 6. But while subsection (a) of § 1502 refers to when expenses must be incurred or contracts must be made, subsection (b) contains no such limitations and does not depend on the application of § 1502(a).

Third, to the extent Defendants argue that the claims here do not constitute a "lawsuit[] … involving the right to an amount payable from the balance," 31 U.S.C. § 1502(b), they misunderstand the complaint. Plaintiffs contend that Defendants violated the 2026 Appropriations Act, Pub. L. No. 119-75, 140 Stat. 173, 281, by attempting to spend the $101 million that Congress appropriated for the TPP Program under a policy that conflicts with Congress's directives. *See* Compl. ¶¶ 84–85, 90, 99–102. And Plaintiffs seek an order barring Defendants from applying their unlawful policy to funds available under the 2026 Appropriations Act and future appropriations for the TPP Program. *See id.* Prayer for Relief ¶¶ (c)–(d), (g)–(h). Those claims, which challenge how the agency has decided to spend funds for which a Plaintiff might otherwise compete, are covered by § 1502(b). *See Washington*, 161 F.4th at 1139, 1141 (determining that § 1502(b) applies to plaintiffs' challenge to unlawful discontinuation of grants, even where plaintiffs had agreed they were not "automatically entitled to grant continuances"). The Comptroller General—the legislative officer in charge of GAO—has reached the same conclusion. In a 1983 decision that GAO continues to cite in the GAO Redbook, the Comptroller General recognized that, where a labor union had filed an unfair labor practice charge against an agency related to the process for negotiating performance pay, § 1502(b) operated to make the expired but unobligated funds available to satisfy whatever performance pay awards resulted from the renewed negotiation. *See* 62 Comp. Gen. 527 (1983); GAO Redbook 5-88. The Comptroller General reached that conclusion even though the dispute before the federal labor relations board was over process, not substance,

and the union's claim was not for a specific award of performance pay out of the expired appropriation.

**B.** With respect to the Court's equitable authority, Defendants have even less to say. Implicitly acknowledging that binding case law is against them, Defendants complain that Plaintiffs rely on "older D.C. Circuit cases." Opp. 7. But the D.C. Circuit has never disavowed the rule that courts have the equitable power to suspend statutory lapse deadlines; in fact, it has reaffirmed the principle. *See City of Houston v. HUD*, 24 F.3d 1421, 1426 (D.C. Cir. 1994). While the court declined, in *Goodluck*, to extend the principle outside of the appropriations context, that opinion casts no doubt on the continued validity of its longstanding caselaw. *See* Order, *Nat'l Family Planning & Reproductive Health Ass'n v. Kennedy*, No. 25-cv-1265-ACR (D.D.C. Sept. 12, 2025), Dkt. No. 38 (reasoning that "[t]he primary case Defendants rely on, *Goodluck v. Biden*, does not contest this authority" to suspend the lapse deadline of an appropriation); *Nat'l Fair Hous. All. v. HUD*, No. 25-cv-1965-SLS, 2025 WL 2105567, at *12 n.4 (D.D.C. July 28, 2025) (noting that, at oral argument, the government had appropriately conceded that "the D.C. Circuit did not overrule this line of cases in *Goodluck v. Biden*").

Defendants suggest that exercising the equitable authority recognized in binding precedent would create a conflict with either the Appropriations Clause or the Impoundment Control Act. As to the Appropriations Clause, however, the D.C. Circuit has already held that "the power to prevent the statutory lapse or reversion of an agency's budget authority does not conflict with Congress' exclusive power to appropriate funds." *Connecticut v. Schweiker*, 684 F.2d 979, 997 (D.C. Cir. 1982). While Defendants suggest that the Supreme Court held otherwise with its evaluation of "equitable remedies" in *OPM v. Richmond*, 496 U.S. 414, 428 (1990), *see* Opp. 8, that case is inapposite. In *Richmond*, the Supreme Court rejected the argument that, under principles of

equitable estoppel, a claimant who received erroneous advice from a government official could be entitled to payment from the government that he was not otherwise entitled to by statute. 496 U.S. at 428. While application of estoppel and the suspension of appropriations deadlines both involve an exercise of a court's equitable power, they function in opposite ways. In *Richmond*, application of equitable estoppel would have contravened Congress's directives, allowing the executive to "obligate the Treasury for the payment of funds" where Congress had said no. *Id.* Here, exercising the Court's equitable authority will "give[ ] effect to congressional intent," *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 184 (D.C. Cir. 1992), by ensuring that the executive's thwarted misuse of appropriated funds does not mean they expire without being used as Congress instructed. *See also Defy Ventures, Inc. v. U.S. Small Bus. Admin.*, 469 F. Supp. 3d 459, 479 (D. Md. 2020) (concluding that extending a statutory obligation deadline did not "intrud[e] on Congress's appropriation power," where the plaintiffs were "at risk of losing a benefit for which they are eligible because of arbitrary and capricious agency action").

Defendants' argument about the Impoundment Control Act (ICA) fares no better. Defendants offer no citation for the proposition that the ICA implicitly overrode the D.C. Circuit case law discussed above, and the D.C. Circuit has repeatedly reaffirmed this authority over the nearly half-century since the ICA's passage. Defendants point to the provision of the ICA authorizing the Comptroller General to bring an enforcement suit when the executive improperly does not make a "budget authority … available for obligation." 2 U.S.C. § 687. But Plaintiffs do not challenge the executive's failure to make TPP Program funds available for obligation. Rather, after successfully challenging Defendants' attempt to spend the funds unlawfully, they ask for an extension of the obligation deadline to ensure that the timing of Defendants' unlawful activity does not result in the funds' inadvertent expiration. The ICA has nothing to say, explicitly or implicitly,

in this context. Defendants offer no reason to reject the case law discussed above. *See supra* at 2, 5.

**II. The requested relief does not impose new or improper restrictions on Defendants' use of TPP Program funds.**

As a fallback position, Defendants ask that, if the Court suspends the lapse of TPP Program funds, it enter an order that "permit[s] any obligation of funds not inconsistent with the Court's preliminary injunction." Opp. 9 (capitalizations altered). On this point, the parties agree.

The portion of the proposed order to which Defendants apparently object does not impose new restrictions. There, the proposed order clarifies that the requirement for Defendants to "hold" any remaining, unobligated "TPP Program funds made available in the Consolidated Appropriations Act 2026" does not preclude Defendants from lawfully spending those funds, in a manner otherwise consistent with the Court's preliminary injunction order and the statute. While Defendants suggest that it is "ambig[uous]" to require Defendants to expend funds consistent with the Court's opinion, that obligation already applies to them through this Court's existing order. *See* Dkt. No. 33.

Finally, Plaintiffs note that Defendants signaled in their response that they may be planning to expend the remaining TPP funds, including by entering into a contract or providing additional grant funding to the few remaining Tier 2 grantees, before this Court has an opportunity to issue a final judgment on the legality of Defendants' 2026 Policy. *See* Opp. 11. To avoid the possibility that Defendants rush out funds in an attempt to moot aspects of this litigation—and particularly in light of Defendants' suggestion that they find application of this Court's directives to those funding decisions "ambig[uous]," which they claim threatens "an invitation to further disputes," *id.* at 10—the Court may wish to consider requiring Defendants to provide seven days' notice prior to obligation of the funds at issue in this litigation.

## CONCLUSION

For the foregoing reasons, and for the reasons laid out in Plaintiffs' motion, the Court should grant the requested relief.

Date: September 16, 2026

Respectfully submitted,

*/s/ Michael J. Torcello*
Michael J. Torcello (DC Bar No. 90014480)
Kate Talmor (DC Bar No. 90036191)
Carrie Y. Flaxman (DC Bar No. 458681)
Robin F. Thurston (DC Bar No. 1531399)
Skye L. Perryman (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
mtorcello@democracyforward.org
ktalmor@democracyforward.org
cflaxman@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs Hennepin County, King County, and SIECUS*

Cormac Early (DC Bar No. 1033835)
Allison M. Zieve (DC Bar No. 424786)
Stephanie Garlock (DC Bar No. 1779629)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
Phone: (202) 588-1000
cearly@citizen.org

*Counsel for Plaintiffs Hennepin County, King County, and SIECUS*

Emily Nestler (DC Bar No. 973886)
Planned Parenthood Federation of America
1100 Vermont Avenue NW
Washington, DC 20005
Phone: (202) 973-4800
emily.nestler@ppfa.org

*Counsel for Plaintiff Planned Parenthood of the Heartland, Inc.*

Dylan Cowit*
Valentina De Fex*
Planned Parenthood Federation of America
123 William Street, 9th Floor
New York, NY 10038
Phone: (212) 261-4696
dylan.cowit@ppfa.org
valentina.defex@ppfa.org

*Counsel for Plaintiff Planned Parenthood of the Heartland, Inc.*

Hannah Klain*
Karen Dunn (DC Bar No. 1002520)
Jeannie Rhee (DC Bar No. 464127)
Dunn Isaacson Rhee LLP
401 9th Street NW
Washington, DC 20004
Phone: (202) 240-2900
hklain@dirllp.com
kdunn@dirllp.com
jrhee@dirllp.com

*Counsel for all Plaintiffs*

* Admitted pro hac vice