**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HENNEPIN COUNTY, MINNESOTA**, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**, et al.,<br><br>*Defendants*. | **Case No. 26-cv-2460 (CRC)** |

**PLAINTIFFS' MOTION FOR EMERGENCY STATUS CONFERENCE**

Plaintiffs respectfully request that the Court hold a status conference as soon as possible—today or tomorrow, Friday, September 25—in light of Defendants' apparent plans to obligate FY26 Tier 1 Teen Pregnancy Prevention (TPP) Program funds early next week in a way that makes it impossible for Plaintiffs and the Court to assess whether Defendants are spending the funds "lawfully" and in a manner "consistent with the Court's preliminary injunction order and the statute." Dkt. No. 41 at 3 (citation omitted).[1]

Plaintiffs have learned that Defendants intend to award the remaining FY26 Tier 1 TPP Program funds through a single government contract. That course of action, which Plaintiffs understand to be occurring through a solicitation that is not publicly available and that apparently has not been shared with any of the terminated Tier 1 awardees, raises questions as to whether Defendants are complying with the requirement that TPP Program funds be used for "making *competitive* contracts and grants." 2026 Consolidated Appropriations Act, Pub. L. No. 119-75, 140 Stat. 173, 281 (emphasis added). Nor is it clear what reasoned basis there could be for abruptly

[1] Defendants have indicated that they oppose this motion.

pivoting from five-year cohorts with a demonstrated history of success to a single entity chosen without publicly opening the competition to experienced TPP Program providers.

On September 22, Plaintiffs' counsel contacted Defendants' counsel to confirm whether Defendants were proceeding in this fashion and to inquire as to their timeline. Plaintiffs also asked whether Defendants would agree to provide seventy-two hours' notice before obligating the funds at issue in this case, to lessen the potential need for an emergency motion on compliance with the preliminary injunction and/or the legality of any obligation of funds, and to allow the parties an opportunity to confer. Defendants' counsel declined to agree to that proposal or to confirm Defendants' plans for the funds. Plaintiffs also understand that, late yesterday, Defendants awarded to the remaining non-terminated Tier 2 grantees significant additional money, without advance contact with those grantees and without regard to whether those grantees could spend the additional funds in this fiscal year.

This last development heightens Plaintiffs' concerns about the larger sum of Tier 1 funding at issue. HHS's obligation of these funds is directly relevant to this litigation and to Plaintiffs. Last month, this Court held that Plaintiffs were "likely to succeed on their arbitrary-and-capricious challenge to the lawfulness of the 2026 Policy and the NOFOs and grant terminations that have implemented it." Dkt. No. 34 at 53. The Court also recognized that Awardee Plaintiffs were facing irreparable harm in light of "the imminent dismantling of their teen pregnancy prevention initiatives." *Id.* at 55. As the Court explained, "[a] preliminary injunction preventing HHS from implementing the 2026 Policy by way of the FY 2026 NOFOs would preserve Awardee Plaintiffs' opportunity to seek forward-looking funding for their current TPP programs." *Id.* at 56.

While Plaintiffs agree that Defendants may spend the funds lawfully, *see* Dkt. No. 40 at 7, the circumstances here do not warrant an inference that the intended obligation will comply with

the law. Defendants' lack of transparency, coupled with their pattern of similar behavior with respect to the TPP Program over the past eighteen months, suggests that allocating the funds through a single contract may be an attempt to conduct an end run around the agency's obligations. Indeed, the circumstances leading up to this lawsuit show that Defendants have sought to use various vehicles to impose TPP Program requirements that courts have held unlawful. Specifically, in March 2025, HHS issued guidance directing awardees to "review and be aware of current Presidential Executive Orders." Dkt. No. 34 at 7 (citation omitted). A few months later, HHS issued the July 2025 Policy Notice, which imposed a variety of requirements on awardees. *Id.* at 8–9. Judge Howell vacated the Policy Notice in October 2025, concluding that it was arbitrary and capricious on multiple grounds. *Id.* at 9–10. But Defendants were "[u]nfazed by the adverse ruling," as "HHS issued new NOFOs that repackaged the vacated policy changes and imposed additional grant parameters." *Id.* at 60. In light of this history and the novelty of Defendants' furtive approach to obligating TPP Program funds, Plaintiffs—and the Court—need not "exhibit a naiveté from which ordinary citizens are free," *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (citation omitted), by simply taking Defendants at their word that their new plan will be "lawful[]" and "consistent with the Court's preliminary injunction order and the statute," Dkt. No. 41 at 3 (citation omitted).

Plaintiffs understand that applications for Defendants' solicitation as to Tier 1 funds may be due as soon as this Friday, with the contract expected to be awarded on Tuesday, September 29. The obligation of the funds would, at the very least, complicate Plaintiffs' ability to later obtain those funds if they prevail on the merits at summary judgment. *Cf.* Dkt. No. 34 at 33 ("Awardee Plaintiffs may very well ultimately persuade the Court that it has jurisdiction to order relief as to

the grant terminations."). In other words, Defendants' plans threaten to deprive Awardee Plaintiffs of the "opportunity to seek forward-looking funding for their current TPP programs." *Id.* at 56.

Accordingly, Plaintiffs respectfully request that the Court hold a status conference as soon as possible—and no later than Friday, September 25—to discuss any plans to obligate the Tier 1 funds and whether Defendants should be required to give notice and additional details about the intended plan before proceeding.

Date: September 24, 2026

Respectfully submitted,

*/s/ Michael J. Torcello*
Michael J. Torcello (DC Bar No. 90014480)
Kate Talmor (DC Bar No. 90036191)
Carrie Y. Flaxman (DC Bar No. 458681)
Robin F. Thurston (DC Bar No. 1531399)
Skye L. Perryman (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
mtorcello@democracyforward.org
ktalmor@democracyforward.org
cflaxman@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org
*Counsel for Plaintiffs Hennepin County, King County, and SIECUS*

Hannah Klain*
Karen Dunn (DC Bar No. 1002520)
Jeannie Rhee (DC Bar No. 464127)
Dunn Isaacson Rhee LLP
401 9th Street NW
Washington, DC 20004
Phone: (202) 240-2900
hklain@dirllp.com
kdunn@dirllp.com
jrhee@dirllp.com
*Counsel for Plaintiffs*

Cormac Early (DC Bar No. 1033835)
Allison M. Zieve (DC Bar No. 424786)
Stephanie Garlock (DC Bar No. 1779629)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
Phone: (202) 588-1000
cearly@citizen.org
*Counsel for Plaintiffs Hennepin County, King County, and SIECUS*

Emily Nestler (DC Bar No. 973886)
Planned Parenthood Federation of America
1100 Vermont Avenue NW
Washington, DC 20005
Phone: (202) 973-4800
emily.nestler@ppfa.org
*Counsel for Plaintiff Planned Parenthood of the Heartland, Inc.*

Dylan Cowit*
Valentina De Fex*
Planned Parenthood Federation of America
123 William Street, 9th Floor
New York, NY 10038
Phone: (212) 261-4696
dylan.cowit@ppfa.org
valentina.defex@ppfa.org
*Counsel for Plaintiff Planned Parenthood of the Heartland, Inc.*

* Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2026, I filed the foregoing document with the Clerk of Court for the U.S. District Court for the District of Columbia using the court's CM/ECF system.

*/s/ Michael J. Torcello*
Michael J. Torcello